I think that the order granted below was right, which directed a peremptory writ of mandamus to issue, commanding the inspectors of election of the 16th election district, of the 4th assembly district, Queens county, to meet and to count certain 17 ballots, which had been "protested as marked for identification" and which the inspectors had not *Page 342 
counted for any candidate, for the candidates whose names appear thereon for the office of Municipal Court justice of the 4th Municipal Court district, of the borough of Queens, to make a true return thereof and to correct their statement of the votes cast in said district.
If the effect of the proceeding had been to command a recount of ballots, already counted by the inspectors of election, it would be contrary to the law. (Matter of Hearst v. Woelper,183 N.Y. 284.) But that was not the case. The question presented upon these records relates to 17 ballots, on which no vote was counted for candidates for justice of the Municipal Court of the city of New York, 4th district, borough of Queens, or for any candidate thereon. By reference to these records, it appears from the tally sheet of ballots cast in this 16th election district that the total number of ballots cast was 361 and that, as to 17 of them, no vote was counted for the office in question. The county clerk's official statement of "Election Returns" shows the same number of ballots, out of the whole number, on which such vote was not counted. By the affidavits, upon which the application for a writ of peremptory mandamus was made, it appeared from the statements of two of the inspectors of election that 17 ballots cast in the said election district were marked "protested as marked for identification" and "were not counted for any candidate whose name appeared thereon." On the hearing had, upon the return to the order to show cause why the application should not be granted, all the inspectors of election "appeared and stated in open court that the 17 ballots were not counted for any candidate, but were returned as protested ballots". It, further, appeared that these 17 ballots, so marked, were placed with void ballots in an envelope and filed with the county clerk. These facts are recited in the order, which directed the writ of mandamus to issue. That order commanded the inspectors to meet and to open the envelope containing the void and protested ballots and to count the 17 ballots therein, "marked as `protested as being marked for identification', and which were not counted at such general *Page 343 
election for any candidate whose name appears thereon, and to canvass and recount the same for the candidates, whose names appear thereon for the office of Municipal Court Justice", in question. The effect of the order was to require that their "statement and return will show for whom said 17 ballots were cast for the office".
It is clear enough that no recount has been ordered of ballots, which were once counted, or which were included in any return of votes counted for the office of Municipal Court justice. The Election Law, (Secs. 370, 373; 2 Consolidated Laws, 962, 963), requires that all the ballots, which are protested as marked for identification, shall be counted, but must be separately placed in a sealed package, and section 381 provides for a judicial investigation of such ballots, in proceedings taken to obtain the writ of mandamus. As the result of such judicial investigation, any ballot, which the court determines to have been marked for the purpose of identification, is "to be excluded upon a recount of such votes".
It will not do to say that the court is without power, under the Election Law, to order the counting of these 17 ballots. While the power is expressly granted to order a recount of votes, where ballots are held to have been marked for identification and have been counted, and to exclude votes thereon, the power, necessarily, exists, also, to compel a compliance with the statute that all such ballots shall be counted by the inspectors "as if not so protested". (Election Law, sec. 370; 2 Consolidated Laws, 962.) The law assumes a compliance with its direction by the inspectors of election and makes provision for the judicial investigation and for a recount as to ballots questioned and counted, but held invalidated by the court. If the election officers have failed to perform their duty to count such ballots, a case arises where the court should, and may, compel them to perform such duty. If this were not true, there would result a disfranchisement of such voters. Voters, entitled by law to have their votes counted, would be remediless. It is one of the functions of the writ of mandamus to remedy an evil, which would result from the *Page 344 
neglect to perform an official duty. (People ex rel. Smith v.Schiellein, 95 N.Y. 124; Matter of Stewart, 155 ib. 545.) The Election Law continues the inspectors in office for the purpose of proceedings to review their action upon ballots, which have been protested, or rejected by them as void, and they must be deemed as continued in office for such a proceeding as this.
It is unnecessary to consider the appeal in the proceeding to compel the board of county canvassers to correct the certified statement of the result of the canvass of the vote cast at the late general election. I think the opinion of the Appellate Division sufficiently discusses the question involved in that proceeding.
I advise the affirmance of both orders appealed from.